58

SEYFARTH v. COE, Commissioner of Patents.

No. 7820.

United States Court of Appeals for the District of Columbia.

Decided June 29, 1942.

Lynn A. Williams, of Chicago, Ill., with whom James H. Littlehales, of Washington, D. C., was on the brief, for appellant.

W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., for appelleee.

Before STEPHENS, EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The suit is pursuant to Rev.Stat. § 4915 (1878), 35 U.S.C. § 63 (1934) [as amended August 5, 1939, c. 451, § 4, 53 Stat. 1212], to obtain a patent upon a process for preshrinking cotton goods during manufacture of clothing to prevent shrinkage afterward. The Patent Office denied a patent for want of invention. For the same reason the District Court dismissed the suit. The ap-

peal is from that judgment. For reasons to be stated, we think it must be affirmed.

New cotton cloth shrinks when wet. So do new cotton garments when laundered. Shrinkage must be taken into account in making them. The problem is old. So are some methods of meeting it. The most common one is to cut the garment pieces larger than the intended size. Several launderings—four or five—are required to secure full shrinkage. These usually take place after the garment is sold to the consumer.

Appellant's process, "Relyonsize," preshrinks the finished garment. It has been used chiefly in making low-cost men's shirts. Preshrinking is not new. Appellant's improvements are in the accuracy, speed and completeness of the shrinking and in doing it without removing the sizing applied in making the cloth. The claimed advantages are that the shirt (1) is fully shrunk, and (2) retains the "feel," sheen and better appearance given by the sizing and regarded by trade custom as necessary for marketing. A short explanation of the way cotton yarn, cloth and garments are manufactured will aid in understanding the claimed invention.

Natural cotton fiber is shaped like a corkscrew. In spinning and weaving, tension is applied repeatedly. This straightens and elongates the fibers. To hold them in their elongated shape sizing, composed of starches, gums and tallows, is applied. This makes the fibers, the yarn and the cloth easier to handle, less likely to ravel. It also gives the finished garment better appearance. Wetting the cloth softens the sizing. Four or five launderings remove it entirely. Softening the sizing releases the elongated fibers to resume their natural or spiral shape. Hence shrinkage. In weaving more tension is placed on the warp than on the weft or woof. Sizing holds the fibers in these different tensions. Softening therefore causes greater shrinkage in the warp than in the weft. Consequently shrinkage of the cloth is not uniform in the two directions. This complicates somewhat the problem of cutting to allow for it.

Appellant's "Relyonsize" process uses regular sized, calendered and finished piece goods in all the steps of cutting, folding and sewing the pieces into a complete oversized shirt. Previously, from a sample, accurate predetermination of the amount of shrinkage is made, and the cloth is cut to

allow for this. The completed oversized shirt is wet thoroughly in water containing a "wetting-out" agent. This is a chemical which softens thoroughly, but does not remove the bulk of the sizing. The softening allows the fibers to resume fully their natural corkscrew shape. Hence the shirt is shrunken completely, permanently and to the intended size. The shrinking takes place in one submergence lasting a minute or two. It is the equivalent of what occurs in four or five launderings. Water is removed from the shrunken shirt by a centrifugal extractor. Then the garment is pressed on a heated, flat buck so that no stretching of fabric occurs, and the sizing is dried, hardened and reset so that it grips and encases the shortened corkscrew fibers. The shirt is then folded and packaged for sale. The buyer gets a shirt neither too big when it is new nor too small when it is washed, and one which retains the sizing gloss.

The invention, as it is now claimed, is in the features of complete, quick and accurate preshrinking to the size desired and doing this without removing the sizing. The process has been a commercial success. It works quickly and cheaply. This is important, since competition in producing low-cost shirts is keen and slight difference in cost may make or break a product. "Relyonsizing" may be used on either colored or bleached garments.

The Patent Office denied a patent on two references, Ainslie, No. 1,480,541, and a publication, Watson, "Textiles and Clothing," page 212. The District Court added Cluett, Nos. 1,861,423 and 1,944,001. The latter involve a widely used preshrinking process known as "Sanforizing." There was also a stipulation concerning the ancient practice of housewives to make garments larger than the size desired to allow for shrinkage.

Watson teaches preshrinking by washing, predetermination of the percentage by measuring, washing, pressing, then measuring again, a sample of the material. She also suggests allowance for shrinkage in making up wash goods to be worn several times before washing.

Ainslie also discloses preshrinking by washing. It uses "gray goods," that is, unbleached and unshrunk cloth. This is cut in oversize blanks, which are sewed together to make an oversized garment. It is then bleached and shrunk. The process has been used largely in making collars.

Cluett was the principal reference in the trial court. A sample is laundered several times to determine the amount of shrinkage. With this information as a guide, piece goods is moistened slightly and then crinkled. The crinkling is mechanical, like that of crepe paper. It reduces the goods approximately to the size which full natural shrinkage by laundering would produce. After crinkling, the sizing, which is merely softened so that the fibers are only partly released from its binding action, is set again by heat. Sanforizing therefore produces a crinkled garment of the size desired and also retains the sizing. But, according to the evidence, Sanforized garments increase again in size with the first laundering, which removes the crinkle. Then they shrink again as subsequent washings remove the sizing.

Appellant claims definite advantages over all the references. According to the evidence, Ainslie cannot be used on colored garments, since it uses "gray goods," and there is no known art for dyeing or printing garments of such material after it is made up. "Gray goods" also must be starched after the garment is finished by this process. The shrinking is done by washing, as is predetermination of its amount. Appellant also says the latter process does not disclose in advance the precise dimensions the garment will have after several launderings.

Watson teaches preshrinking by washing only, which would remove the sizing and the cloth's luster and finish, if done before sale. If not done then, the purchaser would buy an oversized garment and then launder it several times to secure full shrinkage. Percentages of shrinkage produced in the warp and weft are different. It is claimed also that Watson teaches no method for accurate predeterminatoin of shrinkage.

Appellant admits that Sanforizing "comes close to a solution of the problem." But he says it does not fully solve it because it produces a mechanical, not a natural shrinkage. Crinkling shrinks the fabric mechanically, not by releasing the fibers from the grip of the sizing as "Relyonsizing" does. This, appellant says, is the vital distinction between the two processes.

It seems clear that appellant's process is highly useful and efficient, produces the

results claimed for it, and does this simply and at low cost. Without doubt it is a useful improvement.

Appellant summarizes the features of novelty in his process as consisting in: (1) precompensating exactly for the shrinkage in both warp and weft directions, as determined from the complete shrinkage of a sample; (2) performing all the spreading, cutting and sewing operations on regularly sized fabric; (3) thoroughly wetting the otherwise completed shirt, using a penetrating or wetting-out agent, and thereby retaining the sizing within the fabric; and (4) pressing and folding the shirt without stretching, thereby drying and resetting the sizing in such a way as to produce a shirt having the finish, feel and appearance necessary to salability. It is said the prior art does not disclose this process or any by which these results may be obtained.

Before the Patent Office and in the District Court appellant relied on numerous claims. Some emphasized as inventive the method of predetermining the amount of shrinkage. Taken independently of other features, it is not so. Watson and Cluett disclose predetermination by measuring shrinkage in a sample. They follow or suggest shrinking by laundering or washing. Appellant does it by wetting out. If his measurement is more accurate, it is because his shrinking is more complete, in other words because wetting-out action is more thorough and reliable than laundering. There is no invention in the mere refinement of the methods of measurement.

Nor is there in the use of regularly sized fabric in spreading, cutting and sewing. This appears to be the normal mode of manufacture. Ainslie departs from it by using "gray goods." Cluett crinkles the sized goods. If these are departures from usual procedure, that does not make appellant's observance of it inventive.

Neither is there invention in removing the water from the shrunken goods with the centrifugal extractor or in pressing the shirt on the heated flat buck. None of these features, nor all of them together, contain anything new in the inventive sense. All are mere adaptations of the prior art. If they have any inventive effect, it is because they are found in combination with the other feature stressed, and now the one principally relied upon.

This is the use of the wetting-out agent. Appellant does not claim that wetting out as such is new, or that the chemical substance used for this is part of his invention. Use of wetting-out agents in general is well known. The claimed invention is merely in adapting their use to finished oversized garments to produce complete, quick and inexpensive shrinkage and also retain the sizing. In no other way has appellant changed the normal modes of manufacture.

The idea amounts to a short-cut laundering process so far as the shrinking is concerned. It does in this respect just what four to six launderings would do. Moreover, it does this quickly and cheaply. It eliminates the cost of successive launderings. The process also retains the sizing, which laundering would remove. There are therefore two advantages over other known methods, except Sanforizing. The shrinkage is done quickly, cheaply, completely and accurately. The bulk of the sizing remains.

In view of the well-known properties and uses of wetting-out agents, we cannot say there was invention in adapting their use to the manufacture of finished garments, so far as the feature of shrinkage alone is concerned. The addition of stronger solvents in wetting or laundering to release the fibers more rapidly and fully seems clearly to be taught by common experience or laundering practice, if it is not obvious. Invention, if it exists, must rest therefore upon accomplishing this without removing the sizing. The latter effect is essential, whether as being in itself inventive or as being so in combination with the shrinking and the way in which it is accomplished.

The trial court seems to have thought that both features have been anticipated. We are unable to find anticipation of the combination in the references. Neither Watson nor Ainslie suggests or teaches complete shrinking and retention of sizing in one operation. Their method of shrinking would make retention of the sizing impossible. Cluett attains both advantages, but does so only apparently. Sanforizing both shrinks the goods and retains the sizing. But the shrinking is not the sort which Relyonsizing achieves. It is mechanical and, according to this record, temporary, that is, effective only until the first laundering. Then the mechanical or crinkled shrinkage disappears, the garment expands almost to its original oversized proportions, and several launderings are required to reduce it to its permanent size. There is

therefore no true immediate shrinkage in Sanforizing as there is in Relyonsizing. Because there is an apparent one, Sanforizing may be regarded as suggesting the combination of complete and permanent shrinking and almost complete retention of sizing. It does not achieve the combination. Nor does any of the other references.

However, in view of the status of the case on the appeal, we are not required to decide whether the trial court was wrong in holding the invention anticipated by the prior art. At the oral argument, counsel abandoned the appeal as to all claims except one and limited it to claim four. It is as follows: "The method of manufacturing an article of clothing made from a woven fabric in which the thread fibers are constrained in elongated condition by starch or the like, which will be softened and partially removed during wetting and upon removal will permit the thread fibers to contract to their normal condition, thereby causing shrinkage in the article of clothing; which comprises cutting the pieces from the starched fabric, sewing the pieces together to form the article of clothing, thoroughly wetting the sewed article by means of water containing a wetting out agent, and pressing and folding the article substantially without stretching the thread fibers."

We are unable to find in the language of this claim anything which requires retention of the sizing, or the bulk of it, in connection with or as a consequence of the process. That feature as we have said is essential, if invention exists in this process. It is as important as the shrinking feature, or more so. Without it there was only a short-cut laundering, which was either obvious or taught by the prior art to one skilled in it For want of sufficient description of the invention in the only claim now before us, the judgment of dismissal must be affirmed. To direct that a patent issue on that claim in effect would be to give appellant a monopoly upon use of wetting-out agents in preshrinking cotton garments. In itself, as we have said, that would not be patentable.

We are not at liberty, as appellant suggests, to fill out the deficiency in the claim by reference to the application or to other claims not before us.

We have considered appellant's other objections to the proceedings in the trial court, but find nothing in them which amounts to reversible error.

The judgment is affirmed.

EDGERTON, Associate Justice, concurs in the result.